1   CAROL A. SOBEL, State Bar No. 84483
    LAW OFFICES OF CAROL A. SOBEL
2   429 Santa Monica Boulevard, Suite 550
    Santa Monica, California 90401
3   (310) 393-3055; FAX 393-3605

4   REBECCA F. THORNTON, State Bar No. 231128
    LAW OFFICE OF REBECCA F. THORNTON
5   429 Santa Monica Boulevard, Suite 550
    Santa Monica, California 90401
6   (310) 393-3055; FAX 393-3605

7

  Attorneys for Plaintiffs
8

9                **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | | |
|---|---|
| CANGRESS, et al., | ) CASE NO. cv 08-01191 DDP (RZx) |
|       Plaintiffs, | ) |
|    vs. | ) PLAINTIFFS' EX PARTE |
| | ) APPLICATION TO COMPEL THE |
| | ) PRODUCTION OF DOCUMENTS |
| CITY OF LOS ANGELES, a municipal | ) ORDERED DISCLOSED BY THE |
| corporation, et al., | ) COURT ON JUNE 21, 2010 AND TO |
| | ) ENTER PLAINTIFFS' PROPOSED |
|       Defendants. | ) PROTECTIVE ORDER; |
| | ) DECLARATION OF COUNSEL; |
| | ) EXHIBITS |

                                 DATE:  To be set
                                 TIME:  10:00 a.m.
                                 CTRM: 540 (Roybal Bldg)

       Plaintiffs hereby file this Ex Parte Application to Compel the Production of Documents Ordered Disclosed on June 21, 2010 by the Court.  This Application is based upon the attached declaration of counsel, the Memorandum of Law set forth below, and all exhibits filed in support of the Ex Parte Application. Defendants are represented by Colleen Smith, Deputy City Attorney, City Hall East 6th Fl., Los Angeles, CA 90012, t. 213 978-7027, colleen.smith@lacity.org.

**MEMORANDUM OF LAW**

**I.    STATEMENT OF FACTS**

**A.    The Hearing on the Motion to Compel Held June 21, 2010**

On June 21, 2010, the parties appeared before the Court on Plaintiffs' Motion to Compel production of the documents for which Defendants had claimed a series of privileges based on records contained in a police officer's personnel file and similar state law evidentiary privileges.  At the hearing, the Court held that Defendants had submitted an inadequate privilege log and that the supporting declaration was also insufficient to establish the privileges asserted.  Accordingly, the Court held that Defendants had waived all privileges against disclosure and ordered the documents produced to Plaintiffs.  Defendants then asked that the Court consider making the disclosure subject to a protective order.  Plaintiffs voluntarily agreed to a protective order.  Sobel Declaration ("Sobel") at ¶ 3.

**B.    The Areas of Dispute in the Protective Order**

Following the hearing, Plaintiffs' counsel provided the Defendants with a proposed protective order and a copy of an order issued by Judge Olguin in the case of *Santiago v. City of Los Angeles*, cv-07 2966 AHM (FMOx), one of the companion cases to *Multi-Ethnic Immigrant Worker Organizing Network v. City of Los Angeles,* cv 07-3072 AHM (FFMx), the lead case in the recent litigation arising out of the LAPD's assault on an immigrant rights rally in Mac Arthur Park on May 1, 2007.  *Id.* at ¶ 3, LINES 25-28.

The parties in this action have exchanged several drafts of a proposed protective order.   Plaintiffs excepted several proposed revisions by Defendants to the *Santiago* protective order and rejected others.  The parties are now at an impasse, requiring the Court's review and direction.   A copy of the protective order is attached at Exhibit 1 with the issues in dispute marked in bold and Plaintiffs' objections marked in italics and underlined.  Sobel at ¶ 5.

There are four areas of dispute:

2

1.     The first issue involves how the documents will be marked by Defendants.  Exhibit 1 at p. 2, lines 1-3.  Defendants employ an archane manual method of marking "confidential" documents, which involves using a stencil overlay and photocopying each page individually.  This process results in documents which are illegible in significant part and which only become increasingly illegible when the document is photocopied for use in a deposition or other proceeding in the case.  Attached at Exhibit 2 is a true and correct copy of a page produced by Defendants in the May Day litigation.  Significant portions of the text were obscured by Defendants' stencil overlay.  Plaintiffs have proposed that the documents be marked using Adobe Acrobat Pro, which permits a visible watermark to be imbedded in the document electronically.  Alternatively, Plaintiffs have proposed that the documents only be marked in the margins with the "confidential" notation if Defendants insist on producing the documents in their customary manner.  Attached at Exhibit 3 is a true and correct copy of a page produced by Defendants in the May Day litigation after the original production was objected to by Plaintiffs' counsel in that case, who are all plaintiffs' counsel in this action.  Attached at Exhibit 4 is a sample document marked electronically using Adobe Acrobat.

Defendants' counsel has informed Plaintiffs' counsel in this action that they will not produce the documents with a marking on the margins because it permits a recipient to block the confidential stencil and copy the document without it.  This concern is readily met by marking the documents in Adobe Acrobat as shown in Exhibit 4.  Plaintiffs' counsel has offered to permit Defendants' staff to use her notebook computer to prepare the documents, insert the watermark electronically, and apply a password to the document production so that Plaintiffs' counsel cannot remove the watermark.   Given the available technology and the minimum burden on Defendants, who would otherwise copy the documents a page at a time with the stencil laid down on the photocopier bed, there is no justification for producing the documents in any other manner.

2.     The second issue involves who may see the "Confidential" documents. *See* Ex. 1 at p.2, point 3(a).  Defendants object to including potential witnesses at deposition or trial in the lis tof persons to whom the documents may be disclosed.  In this instance, several of Plaintiffs' potential witnesses also filed complaints with the City about the incidents which form the basis of this litigation.  For example, Gerald Barnes filed a complaint concerning the February 1, 2008 arrest of Plaintiffs White and Richardson.   That document has been provided to Defendants in discovery and Defendants have also noticed the deposition of Mr. Barnes.  Mr. Barnes is a witness to the entire incident.  It would be fundamentally unfair for Defendants to conduct an investigation into these complaints and then refuse to permit Mr. Barnes to see the investigation of his complaint while insisting on deposing him with the assistance of their "secret" evidence about the case.  This particular case is about the policy, practice and custom of the LAPD to detain, arrest and otherwise harass the Plaintiffs to block them from recording police conduct on public streets and sidewalks.  It would be the ultimate contradiction to keep private investigations of complaints about public interference with First Amendment activity by the LAPD.

3.     The third issue is Defendants' objection to allow use of the same information if it is obtained independently of the "Confidential" documents produced by Defendants.  *See* Ex. 1, p. 2, point 4.  This is an instance where Plaintiffs have considerable information which may be contained in the "Confidential" materials, including materials that have already been produced by the parties.  At least four, if not more, of the Complaints sought to be produced here involve the detention and arrest of the two individual Plaintiffs in this case and the individual Plaintiffs in several other actions now pending in the federal court and arising from these same policies, practices and customs of the LAPD.  Attached at Exhibit 5 is a chart of LAPD Investigations opened in response to complaints filed by the Plaintiffs in this case and their employees. In each instance, Plaintiffs were advised of the existence of the investigation by letter sent to the undersigned counsel from the LAPD.  To remove this provision would place

4

the Plaintiffs and their witnesses at an impermissible risk of prosecution for violating the protective order in this action through dissemination of information already known to them.

4.    The fourth area of disagreement involves the provision of deposition testimony "involving information derived from such 'Confidential Information'" to a deponent or providing copies of the deposition to any other potential witness or deponent.  This issue is linked to the issue raised at point 2, above, regarding who may see the "Confidential Information."  Under Defendants' construction of this section, if the deponent is not a party witness, an expert or someone else identified in Defendants' list of permissible reviewers, they may not see the segregated sections of their own deposition if part of the testimony elicited is "derived from" the purportedly "Confidential Information."  This means that they do not have the opportunity to review or correct the deposition.  Second, the segregated portions of the deposition could not be shared with another non-party witness, even if they are referred to in the deposition.  This impermissibly restricts Plaintiffs' ability to prepare their witnesses both for depositions and for trial.  Defendants have already sought to depose several individuals who would fall into this categorical exemption, all of whom were percipient witnesses to the events which are the subject of the "Confidential Information."

## II.    A PROTECTIVE ORDER MUST BE NARROWLY DRAWN AND BASED ON A SHOWING OF GOOD CAUSE TO LIMIT DISCLOSURE

"It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public."  *San Jose Mercury News, Inc. v. United States District Court*, 187 F.3d 1096, 1103 (9th Cir. 1999).  This rule may only be overcome by a showing of good cause as to why disclosure of specific documents should be limited.  *Id.*, citing F.R.Civ.P. 26(c).  The party opposing disclosure bears the burden of showing "specific prejudice or harm" from compelled disclosure.  *Id.* at 1102.  If the Court finds that particularized harm will result from disclosure, the court must then balance the interests of the parties to determine whether a protective order is

1     necessary and the scope of any order. *See Glenmede Trust Co. v. Thompson*, 56 F.3d

2     476, 483 (3d Cir. 1995) (citing applicable factors).

3         There is no showing Defendants can make in this instance as to "specific

4     prejudice or harm" related to any of the disputes regarding the scope of the protective

5     order to be issued in this case.  Defendants cannot show why they will be impermissibly

6     harmed if they are required to produce the "Confidential" information with Plaintiffs'

7     proposed watermark that leaves the documents easily legible.  There is no showing of

8     "specific prejudice or harm" that can be made regarding the ability of potential

9     witnesses at trial or deposition to see the documents, especially since in this instance,

10    the witnesses provided some of the materials upon which the "Confidential"

11    investigations are based and already know a substantial amount of the information

12    contained in these documents both from their own direct observations and their

13    discussions with the named Plaintiffs.  There is, similarly, no showing that can be made

14    as to why the protective order should prohibit these same witnesses from reviewing their

15    full deposition testimony if some portion of it would otherwise be segregable because

16    it contains information "derived from" the "Confidential Information."

17        Protective orders must be narrowly tailored because they contravene the principal

18    that pre-trial discovery is presumptively public. *San Jose Mercury News*, 187 F.3d at

19    1103. Here, the disputed provisions of the proposed protective order are not narrowly

20    tailored.  Defendants seek sweeping restrictions which would limit Plaintiffs' ability to

21    prepare their case, subject Plaintiffs and non-party witnesses to potential contempt for

22    revealing information known independently of the privileged documents and would

23    prevent the non-party deponents from reviewing segregable portions of their own

24    depositions.

25        For the reasons stated above, Plaintiffs request that the Court enter the Proposed

26    Protective Order filed concurrently with this Ex Parte Application and direct that the

27    documents be produced no later than July 7, 2010 or within 48 hours of the entry of this

28    Order, whichever is sooner.

1

2    Dated: June 29, 2010                  Respectfully submitted,

3                                          LAW OFFICE OF CAROL A. SOBEL
                                           LAW OFFICE OF REBECCA F. THORNTON
4
                                                   /S/
5                                          By:     CAROL A. SOBEL
                                                   Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am the attorney for Plaintiffs in the above-captioned action. I am admitted to practice before the United States District Court for the Central District of California. I have personal knowledge of the facts set forth below and, if I were called to testify to those facts, I could and would do so competently.

2.      On Friday, June 25, I notified Deputy City Attorney Colleen Smith that I would seek an ex parte order from the Court to compel production and entry of Plaintiffs' requested protective order if the parties were unable to reach agreement on the form of a protective order and the marking of documents as "Confidential." On Monday, June 28, when the City did not respond to Plaintiffs' reply to Defendants' requested changes to the draft protective order, I emailed Colleen Smith and requested that she advise me of the City's position on the Ex Parte Application. I have received no further comments or edits from the Defendants. By email on June 29, 2010, Deputy City Attorney advised me that the City would file an opposition to this Ex Parte Application.

3.      On June 21, 2010, I appeared before the Court on Plaintiffs' Motion to Compel. Defendants were represented by Supervising Assistant City Attorney Cory Brente and Deputy City Attorney Colleen Smith. At the conclusion of the hearing, the Court ordered production of certain categories of documents. I voluntarily agreed to enter into a protective order to cover the production, even though the Court ruled that the City had failed to assert or preserve properly the privileges that Defendants claimed applied to the requested documents. At that hearing, I informed the Court that I would provide the City with a copy of a recent protective order stipulated to by the City in a recent case. I provided a copy of the protective order in the *Santiago* case to the Defendants' counsel while we were still in the courtroom. A true and correct copy of the Stipulated Protective Order I handed to Defendants' counsel is attached at Exhibit 1.

4.     On June 21, 2010, I also prepared and sent to Defendants' counsel a sample page watermarked as "Confidential" using the digital marking system in Adobe Acrobat Pro 9.  I did so because on the walk from the Roybal Building to the main federal courthouse for a scheduling conference with Judge Pregerson in a related case, I had discussed the issue of marking the documents with Defendants' counsel.  I advised Defendants' counsel that I would not accept the documents marked as they had been in the past because the documents were not fully legible and it was too difficult to read them.  I requested that they mark the documents digitally or only in the margins.  Mr. Brente responded to me that he would not agree to apply the "Confidential" mark only in the margins because the documents could then be reproduced by blocking out that text.  He informed me that the City needed to be able to mark the documents as "Confidential" and also include the case name and number so that they could determine in which the case a protective order had been violated if such documents were released in violation of a protective order.  I explained then in person, and have explained repeatedly since in email, that all of Defendants' concerns could be met by using the Adobe program and that I was prepared to permit Defendants' staff to use my notebook computer to mark and encrypt the document so that the "Confidential" watermark could not be removed.

5.     On June 22, 2010, I emailed a copy of a proposed protective order to the Defendants.  Shortly before 11 p.m. on Friday, June 25, Ms. Smith emailed me a revised protective order, incorporating Defendants' changes.  I immediately reviewed the document and returned it to Ms. Smith with the comments now incorporated in italics in Exhibit 2.

6.     Attached at Exhibits 3 and 4 are single pages of documents marked "Confidential" by the City in the *MIWON* litigation cited above.  I no longer have the "Confidential" documents as they were originally produced to me in that case by Deputy City Attorney Geoffrey Plowden.  They were returned to the City when the City produced a revised set of documents after I protested the obliterating stamp.  This single

1    page, which has no confidential information on it and does not identify any individual,

2    was used by me at the time to illustrate to Mr. Plowden why the documents were

3    illegible as originally produced by the City.   My understanding, based on my

4    discussions with the attorneys for Defendants in this case, is Exhibit 3 is the same as

5    the manner in which they intend to produce the documents ordered disclosed by the

6    Court on June 21, 2010.   Attached at Exhibit 4 is a single page from the revised

7    production in the *MIWON* case, marked in the margins.   This is the format the City

8    Attorney has now advised me is unacceptable to them for the documents in this case.

9    Attached at Exhibit 5 is a sample of a document with a Confidential watermark applied

10   using Adobe Acrobat, which is the approach proposed by Plaintiffs

11   .

12          I declare under penalty of perjury that the foregoing is true and correct.  Executed

13   this 29th day of June, 2010 at Santa Monica, California.

14

15                          /s/
                     _____
16                   CAROL A. SOBEL

17

18

19

20

21

22

23

24

25

26

27

28

1          CERTIFICATE OF SERVICE

2          The undersigned hereby certifies that the foregoing document was served this

3   date on all counsel of record by the Electronic Court Filing system for the Central

4   District of California.

5

6   Dated: June 29, 2010                    /s/
                                      CAROL A. SOBEL
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1

1   CAROL A. SOBEL SBN 84483
    LAW OFFICE OF CAROL A. SOBEL
2   429 Santa Monica Boulevard, Ste. 550
    Santa Monica, California 90401
3   t. 310 393-3055   f. 310 393-3605
    e. carolsobel@aol.com
4
    REBECCA F. THORNTON
5   LAW OFFICE OF REBECCA F. THORNTON
    429 Santa Monica Boulevard, Ste. 550
6   Santa Monica, California 90401
    t. 310 393-3055   f. 310 393-3605
7   e. rebecca@humanrightsesq.com

8   Attorneys for Plaintiffs

9

10                  UNITED STATES DISTRICT COURT

11       FOR THE CENTRAL DISTRICT OF CALIFORNIA - Western Division

12
    CANGRESS, et al.,                    )   CASE NO: cv 08-01191 DDP (RZx)
13                                       )
                 Plaintiffs,             )   STIPULATED [PROPOSED]
14                                       )
    v.                                   )   PROTECTIVE ORDER
15                                       )
    CITY OF LOS ANGELES, et al.,         )
16                                       )
                 Defendants.             )
17  _____

18

19       The parties, having met and conferred and stipulated to the following terms and

20  conditions, the Court hereby orders as follows:

21

22       1.    Defendants (hereinafter "Disclosing Party(ies)") may designate as

23  confidential any document or writing that they, in good faith, believe is protected from

24  disclosure within the meaning of FRCivP 26(g), in that they believe the document

25  contains confidential or private information.  Such documents may be classified as

26  subject to this protective order by marking each document or writing with a

27  watermark, such as "Confidential," "Confidential Documents," "Confidential

28  Material," "Subject to Protective Order," or words of a similar effect, in a manner that

does not obscure the text of the document *from being read*.  **If Defendants cannot apply a watermark, they may only mark the document as "Confidential" in the margins of each page.** *I won't agree to take this out unless the City is agreeing to the Adobe watermark, which ensures that the text is readable.* Documents and writings so designated, and all privileged information derived therefrom [hereinafter collectively referred to as "Confidential Information"], shall be treated in accordance with the terms of this Stipulation.  In making this designation, the Disclosing Parties are also representing that no portion of the document is segregable and, therefore, subject to production without restriction as "confidential."

2.    Confidential Information may be used by the persons receiving such information [hereinafter "Receiving Party(ies)"] only for the purpose of litigation of this case, and for such other purposes as permitted by law.

3.    Subject to the further conditions imposed by this Stipulation, Confidential Information may be disclosed only to the Court and the following persons:

(a)    Counsel for the Receiving Parties, and to the plaintiffs, **potential witnesses at deposition or at trial**, experts, investigators, paralegal assistants, office clerks, secretaries and other such personnel working under their supervision;

*The witnesses in this instance filed complaints with the City regarding these incidents.  It would be impossible to 1) have you depose them, or, 2) more importantly, prepare them to testify at trial without telling them what the defendants said about their statements.*

(b)    Such other parties as may be agreed by written stipulation among the parties hereto.

4.    **Nothing in this Stipulation imposes any restrictions on the use or disclosure by a party of material obtained by such party independent of discovery in this action, whether or not such material is also disclosed as Confidential Information in this action, or from disclosing its own Confidential**

**Information as it deems appropriate.**  *I will not agree to take this out.  My clients and witnesses have considerable information that, no doubt, is also repeated in your investigations since the clients filed written complaints and testified at public hearings.*

5.     Prior to the disclosure of any Confidential Information to any person described in paragraph 3(a) or 3(b), counsel for the Receiving Party who seeks to use or disclose such Confidential Information shall first provide a copy of this Stipulation and "have the individual to whom the Receiving Party intends to disclose said "Confidential Information" sign a nondisclosure agreement, stating that the person has received and read a copy of the Stipulation and understands that s/he is bound by the terms of the Stipulation in substantially the form set forth below:

> "I understand that I am being given access to Confidential Information pursuant to the foregoing Stipulation and Order. I have read the Stipulation and Order and agree to be bound by its terms with respect to the handling, use, and disclosure of such Confidential Information."
>
> I also consent to the jurisdiction of the United States District Court for the Central District of California with respect to any proceeding relating to the enforcement of this Stipulation and Order."

Dated: _____          Signed: _____

Counsel for the Receiving Party shall maintain all signed acknowledgments of receipt of the Stipulation and shall produce the original signature page upon reasonable written notice from opposing counsel.  If an issue arises regarding a purported unauthorized disclosure of Confidential Information, upon noticed motion of contempt filed by the Disclosing Parties, counsel for the Receiving Party may be required to file the signed acknowledgment of the receipt and review of the

Stipulation, as well as a list of the disclosed documents, in camera with the Court having jurisdiction of the Stipulation.  The receiving party may not be required to produce any documents that would reveal the identity of the persons given Confidential Information pursuant to this protective order except upon an order of the Court.

6.    Immediately upon final termination of this litigation, including any appeal pertaining thereto and monitoring of an injunction, if any, entered by the District Court, all documents still classified as Confidential Information at that time, and all copies thereof, including copies provided to any qualified person in paragraph 2 herein above, shall be returned to the Disclosing Party.

7.    If any Receiving Party who receives Confidential Information is served with a subpoena or other request seeking Confidential Information, s/he or it shall immediately give written notice to counsel for the Disclosing Parties, identifying the Confidential Information sought and the time in which production or other disclosure is required.  Such notice shall be given sufficiently in advance of the date for production or other disclosure so that the Disclosing Parties have the opportunity to obtain an order barring production or other disclosure, or to otherwise respond to the subpoena or other request for production or disclosure of Confidential Information. Production or disclosure should not be made without prior written approval by the Disclosing Party's Counsel unless required by the subpoena power of another court or becomes necessary as a result of the receipt of third party discovery requests in another case. This stipulation does not limit the subpoena power of another court or the rights of third parties to conduct discovery.

7.    The court reporter, videographer, and audiographer, if any, who record all or part of the depositions in this matter of Defendants City of Los Angeles, or any other current or former employee of the Los Angeles Police Department shall be subject to this Order.  In preparing the original deposition videotape, audiotape, or portions thereof, any copies thereof, or portions of copies thereof, all documents

4

designated as "Confidential Information," and all testimony involving information derived from such "Confidential" documents shall be segregated from the rest of the deposition. **No copies of such segregated "Confidential Information" portions of the materials described above shall be provided to any persons other than the individuals listed in paragraph 3a, above.** *This is unacceptable. First, explain to me how a witness is supposed to review their deposition if they cannot review the portion of the depo dealing with purportedly confidential information? Second, the protective order permits this same information to be shared with paralegals, plaintiffs, etc. There is no reason why the fact that the information is utilized in a deposition should result in a more restrictive use of the material than is otherwise allowed.* Nothing in this agreement is intended to limit the rights of third parties to obtain such Confidential Information through discovery and subpoena power in other proceedings, subject to a reasonable opportunity for the party seeking to prevent disclosure of the Confidential Information to file and have heard a motion for a protective order filed in those proceedings by the party seeking to prevent disclosure of the Confidential Information.

8. If any "Confidential Information" documents or testimony derived from such documents occurs at a deposition, those attending such portions of the depositions shall be bound by this Order and, therefore, shall not disclose to any person or entity, in any manner, including orally, any statements made by Defendants City of Los Angeles, or any other current or former employee of the Los Angeles Police Department during the "Confidential" sections of said depositions.

9. Any pleadings, motions, briefs, declarations, stipulations, exhibits or other written submissions to the Court in this litigation which contain or incorporate Confidential Information shall be filed and maintained under *Local Rule 79-5, which governs the filing of documents under* seal. Any other pleadings, motions, briefs, declarations, stipulations, exhibits or other written submissions that refer but do not contain or incorporate Confidential Information, shall designate the particular aspects that are confidential so as to enable the Court, in drafting presumptively public orders

relating to these filings under seal, to determine whether there is evidence which the Court should attempt not to disclose. If any papers to be filed with the Court contain protected information, the proposed filing shall be accompanied by an application to file the papers or the portion thereof containing the protected information, under seal and that the application shall be directed to the judge to whom the papers are directed. *Pending the ruling on the application, the papers or portions thereof subject to the sealing application shall be lodged under seal.*

10.   Counsel for the parties agree to request that any motions, applications or other pre-trial proceedings which would entail the disclosure of Confidential Information be heard by the Court outside the presence of the jury, unless having heard opposition from counsel to such a process, the court orders otherwise. During trial or other court proceedings, any protective measures relating to confidential information should be taken up with the judicial officer conducting the particular proceeding at the appropriate time.

11.   Nothing herein shall prejudice any party's rights to object to the introduction of any Confidential Information into evidence on grounds including, but not limited to, relevance and privilege.

*12.*   The party designating information, documents, materials, or items as confidential bears the burden of establishing the confidentiality. At any time after receipt of documents labeled as Confidential Information, the Receiving Parties may provide the Disclosing Parties with a written objection to the classification of specific documents as prohibited from disclosure under this protective order and the basis for the Receiving Parties' objection. The Disclosing Party shall, within 30 days of receipt of the written notice, advise the counsel for the Receiving Parties whether the Disclosing Party intends to seek an order from the Court retaining the documents within the Protective Order.  The counsel for the Receiving Parties must, upon receipt of such written notice, continue to treat the documents as Confidential Information until such time as the Court issues a ruling on the Disclosing Parties motion to

maintain the confidentiality of said documents.  Notwithstanding the foregoing, any party bound by this Stipulation who contests the confidential nature of documents produced pursuant to this Stipulation may move the Court for an  order to have the documents removed from the protective order and to have the documents declared not confidential, or otherwise move to modify the Stipulation as to some or all of the documents.  These procedures are in addition to, and not in lieu of compliance with Local Rule 37-1, et seq. relating to discovery motions.

13.     Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

14.     Any procedures specified above in this Protective Order are in addition to, and not in lieu of, compliance with the local rules regarding discovery motions.

Dated: June __, 2010               Respectfully submitted,

                                   LAW OFFICE OF CAROL A. SOBEL
                                   LAW OFFICE OF REBECCA F. THORNTON


                                   By:     CAROL A. SOBEL
                                           Attorneys for Plaintiffs

Dated: June __, 2010               CARMEN J. TRUTANICH, City Attorney
                                   CORY M. BRENTE, Assistant City Attorney
                                   COLLEEN R. SMITH, Deputy City Attorney


                                   By:     COLLEEN R. SMITH
                                           Attorneys for Defendants

7

Exhibit 2

## INTRADEPARTMENTAL CORRESPONDENCE

January 28, 2008
13.5.2

**TO:**      Commanding Officer, Criminal Investigation Division

**FROM:**    Detective ▆▆▆▆▆▆▆▆▆▆

**SUBJECT:** CRIMINAL COMPLAINT INVESTIGATION, CF NO.▆▆▆▆▆▆

### COMPLAINT

This investigation includes a multitude of public complaints involving allegations of UNNECESSARY FORCE against officers of the Los Angeles Police Department (LAPD). While it is customary to detail the nature of the allegations and the involved/accused officer under the complaint heading of the investigation, this information has been consolidated and included in the investigation summary.

Additionally, this investigation was bifurcated due to the volume of allegations and the overall complexity of the investigation. In particular, allegations involving members of the Media were addressed in this investigation, while those involving Civilian/Non-Media complainants were addressed under separate cover and include CF No.▆▆▆▆▆▆. Individuals who were not at MacArthur Park on the date of this incident, but viewed the televised event(s) and expressed concern regarding the event(s) were categorized as Non-Involved Complainants. Public complaints related to Non-Involved parties were addressed under CF No.▆▆▆▆▆▆ (Investigator's Note 1).

### 1070 ISSUES

The administrative statute was tolled pending the outcome of several civil lawsuits filed against the City of Los Angeles related to this investigation. The new administrative statute date has not yet been determined.

### SUMMARY

The "March 25th Coalition" scheduled and organized a demonstration, which was held on May 1, 2007, in the City of Los Angeles. There were several different groups, organizations and independent parties with varying philosophies represented among the demonstrators. The event was comprised of two demonstrations. The first demonstration began at 0830 hours, and assembled at Olympic Boulevard and Broadway. The demonstration traveled through the streets of Los Angeles and concluded at the south lawn of City Hall. The second demonstration began at 1400 hours, and assembled at 3rd Street and Vermont Avenue. The demonstration traveled through the streets of Los Angeles and concluded at MacArthur Park. There were two separate

**Ex. 2**

EHXIBIT 3

CONFIDENTIAL MATERIAL

SUBJECT TO PROTECTIVE ORDER

**INTRADEPARTMENTAL CORRESPONDENCE**

January 28, 2008
13.5.2

TO:           Commanding Officer, Criminal Investigation Division

FROM:         Officer-in-Charge, Administrative Investigation Section-West

SUBJECT:      ADMINISTRATIVE COMPLAINT INVESTIGATION,
              CF NO. 07-002292 AND CF NO. 07-002365

## COMPELLED ADVISORY

All information subsequent to this page was obtained in furtherance of an administrative
complaint investigation. Pursuant to Penal Code Section 832.7, it is deemed
CONFIDENTIAL. The subsequent information herein has not, and shall not be used in
the furtherance of any criminal investigation unless mandated by applicable law.

California Penal Code Section 832.7(a) states, *"Peace officer or custodial officer personnel
records and records maintained by any state or local agency pursuant to Section 832.5, or
information obtained from these records, are confidential and shall not be disclosed in any
criminal or civil proceeding except by Discovery, pursuant to Sections 1043 and 1046 of the
Evidence Code. This section shall not apply to investigations or proceedings concerning the
conduct of police officers or a police agency conducted by a grand jury, a district attorney's
office, or the Attorney General's Office."*

## BACKGROUND

On May 1, 2007, a series of marches took place within the City of Los Angeles to spotlight
immigration reform. The marches were scheduled to predominately take place in the downtown
area in the morning, and later in the afternoon in the Rampart Area, concluding at MacArthur
Park. Although the marchers in this particular case comprised of different groups with varying
philosophies, they were essentially non-eventful, until the second march ended in MacArthur
Park.

The first demonstration began at 0830 hours, and assembled at Olympic Boulevard and
Broadway. The demonstration traveled through the streets of Los Angeles and concluded at the
south lawn of City Hall. The second demonstration began at 1400 hours, and assembled at 3rd
Street and Vermont Avenue. The demonstration traveled through the streets of Los Angeles and

Ex. 3

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER: USDC CV07-3072
Multi-Ethnic Immigrant Workers v. City of Los Angeles

CONFIDENTIAL MATERIAL SUBJECT TO PROTECTIVE ORDER: USDC CV07-3072
Multi-Immigrant Workers v. City of Los Angeles

EXHIBIT 4

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH BURTON and STEVE RICHARDSON<br>Plaintiff(s)<br><br>v. | CASE NUMBER:<br>CV 09-08636 DDP (AJWx) |
| CITY OF LOS ANGELES, a municipal entity, SGT.<br>ZUNIGA and SGT. WIGGINS, in their individual<br>capacities  Defendant(s). | **ORDER RE: SETTLEMENT<br>PROCEDURE SELECTION:<br>REQUEST AND NOTICE** |

The Court, having considered the parties Settlement Procedure Selection Request and Notice, and/or as reflected in the Rule 26 (f) Report, hereby **ORDERS** the Request for:

**SETTLEMENT PROCEDURE NO. 1:   magistrate judge assigned to the case for such settlement proceedings as the judge may conduct or direct.**

be:

☒ APPROVED.

☐ DENIED; **IT IS FURTHER ORDERED** that the settlement procedure shall be as follows:

For Settlement Procedure No. 2, counsel are responsible for contacting the settlement officer at the appropriate time to arrange for further proceedings. Upon obtaining the settlement officer's consent to serve, counsel shall file Form ADR-02 (Stipulation Regarding Selection of Attorney Settlement Officer) with the court. For Settlement Procedure Nos. 1 and 3, counsel are responsible for contacting the judge or mediator at the appropriate time to arrange for further proceedings.

United States District Judge

Dated: June 21, 2010

**Ex. 4**

COMPLAINTS FILED WITH LAPD

| Complainant/wit | CF# | Incident Date | Date Filed | Investigator | Final Dispo |
|---|---|---|---|---|---|
| Burton | 08-000755 | | 2/19/08 | Sgt. Winter | |
| Thomas, Joe | 08-001698 | | 4/15/08 | Sgt. Winter | |
| Jones, Herman | 08-001698 | | 4/15/08 | Sgt. Winter | |
| Richardson, S | 08-001698 | | 4/15/08 | Sgt. Winter | |
| White, Pete | 08-001207 | | 3/17/08 | Sgt. Winter | |
| Richardson, S | 08-001207 | | 3/17/08 | Sgt. Winter | |
| Sobel, C | 09-001027 | (Burton arrest) | 3/10/09 | | insufficient evidence to adjudicate |
| White, Pete | 08-001207 | | 12/6/08 | Sgt. Leticia Garcia | Exonerated |
| Burton, D | 08-000755 | | 2/19/08 | Sgt. Winter | Being addressed in CF 08-1207 |
| Richardson, S | 08-000755 | | 2/19/08 | Sgt. Winter | |
| Richardson, S | 08-000748 | | 2/20/08 | | |
| Richardson, S | 08-000750 | | | Sgt. Urrutia CTD | |
| LACAN | 08-000748 08-000750 08-000755 08-001207 | | 2/20/08 2/20/08 2/19/08 3/17/08 | Sgt. Lou Vince | |
| White, Pete | 08-000755 | | 2/19/08 | Sgt. Winter | |
| Sobel, C | 08-005583 | | 12/2/08 | | |
| Gibbons, James | 08-001207 | | | Sgt. Winter | |
| Sobel, C | 08-004976 08-004979 08-004980 08-004981 | | 10/31/08 | Sgt. Winter | |
| Richardson, S | 08-04976 08-004979 08-004980 08-004981 | | | Sgt. M. Grasso | |

Exhibit 5