1  CAROL A. SOBEL SBN 84483
   LAW OFFICE OF CAROL A. SOBEL
2  429 Santa Monica Boulevard, Ste. 550
   Santa Monica, California 90401
3  t. 310 393-3055   f. 310 393-3605
   e. carolsobel@aol.com
4
   REBECCA F. THORNTON
5  LAW OFFICE OF REBECCA F. THORNTON
   429 Santa Monica Boulevard, Ste. 550
6  Santa Monica, California 90401
   t. 310 393-3055   f. 310 393-3605
7  e. rebecca@humanrightsesq.com

8  Attorneys for Plaintiffs

9

10              UNITED STATES DISTRICT COURT
      FOR THE CENTRAL DISTRICT OF CALIFORNIA - Western Division
11

12 CANGRESS, a non-profit corporation,     )  CASE NO: cv 08-01191 DDP (RZx)
                                            )
13 et al.,                                  )  OPPOSITION TO EX PARTE
                                            )  APPLICATION OF DEFENDANTS
14        Plaintiffs,                       )  TO ENLARGE TIME FOR THEIR
                                            )  UNTIMELY DISCOVERY MOTION
15 v.                                       )  TO BE HEARD
                                            )
16 CITY OF LOS ANGELES, et al.,             )  Date:  None
                                            )  Time:
17        Defendants.                          Ctrm: 3

18

19 I.    INTRODUCTION

20        Judge Pregerson denied Defendants' Ex Parte Application to enlarge the time

21 to file their motion to compel because the Application failed to show good cause why

22 the motion could not have been presented to this Court in the first instance.   The

23 renewed Ex Parte Application similarly lacks good cause for the requested relief.

24        "A scheduling order is not a frivolous piece of paper, idly entered, which can be

25 cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations,*

26 *Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal citations omitted).   Motions filed after

27 the deadlines fixed in the Court's scheduling order are untimely and may be denied on

28 this basis alone.   *Id.* at 608-09.

Defendants' Ex Parte Application should be denied for five reasons:

1) the motion to compel would have been untimely under any set of facts, regardless of the Court's motion calendar schedule because it could not have been heard until <u>after</u> the discovery cut-off date in this action;

2) defendants have misrepresented when this issue became "ripe," telling the court that it did not become so until the Richardson deposition on July 23rd when, in fact, the meet and confer request was sent on July 20th, three days prior;

3) defendants offer no credible evidence of anything Richardson said at his deposition that establishes good cause to grant the motion;

4) the declaration of Colleen Smith concedes that the video is <u>not</u> even marginally relevant since, as defendants' counsel avers, it is not necessary for any dispositive motion either party might file in this case, meaning it is not determinative of any material fact in this case;

5) defendants offer no evidence of "good cause" to excuse the failure to serve this discovery earlier in this case, especially since none of the trials cited as the reason they could not conduct depositions went forward.

## II.   THE EX PARTE APPLICATION SHOULD BE DENIED AS THE MOTION WOULD BE UNTIMELY UNDER ANY SET OF FACTS

Judge Pregerson's rule is clear:  discovery motions are to be heard prior to the discovery cut-off date.  The cut-off date in this action is August 27, 2010.  That means that, in order for this motion to be heard by the discovery cut-off date, it would have to been filed no later than August 2, 2010.  That was impossible at the outset.  As Defendants conceded when the timeliness issue was raised by Plaintiffs' counsel, they knew the motion was not timely but apparently attempted to go forward, no doubt hoping Plaintiffs' counsel would not notice.[1]  See Declaration of Carol Sobel and

---

[1] No doubt, this is why Defendants' counsel first sought to meet-and-confer on this motion on little more than two day's notice, with a cursory email saying only that Defendants disagreed with the assertion of a privilege for these videos.  Defendants

Exhibit 1.  Such conduct should not now be rewarded by enlarging the time for Defendants to bring a motion to compel discovery which is not even relevant to any claim or defense in this case.

### III.   DEFENDANTS HAVE SHOWN NO GOOD CAUSE TO GRANT THE EX PARTE RELIEF AND HEAR THE MOTION TO COMPEL

Defendants have shown no good cause to grant the ex parte application to enlarge time or, for that matter, ordering disclosure of the videos they seek.  Absent a showing of diligence in following the scheduling order or good cause for modification, a motion to alter the scheduling order should be denied.  *Zikovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002).  Attempting to justify their own inexcusable delay, Defendants now try to concoct an argument that the issue "was not ripe" until the deposition of plaintiff Richardson.  Not only is this patently false, but it was not an issue because the initial meet-and-confer request was made three days prior to the deposition of Richardson.[2]  Defendants thought the issue was "ripe" before Richardson's deposition, not after as they now claim.

The second reason this assertion is false is that Defendants concede that "a discovery issue" concerning the videos arose during the deposition of PMK Rebecca Dennison. Def. Mem. at p. 7, lines 1-2.  Significantly, they asked not a single question of Dennison or White in their PMK depositions about the privilege log .

The fact is that Defendants did not even serve discovery seeking these videos until mid-May, more than two years after the case was filed.  Defendants knew Plaintiffs' objections to the sweeping request for all videos more than a month prior to the time that they deposed Plaintiff Richardson.  In fact, the discovery Defendants now claim is being withheld improperly was sought as part of the deposition of the

---

articulated no facts or law to support their request to meet and confer, making any meaningful conference impossible.

[2]  See Sobel Dec. at ¶2 and Exhibit 1 (Smith letter dated July 20, 2010).

PMK for plaintiff CANGRESS.  Plaintiffs served their discovery response, together with objections and a privilege log, in mid-June.  Defendants deposed the PMKs for CANGRESS, Plaintiff White and Rebecca Dennison, the co-executive director of CANGRESS, on July 7th, more than two weeks before Richardson was deposed. There is nothing in Plaintiff occurring's deposition testimony that suddenly caused this issue to become "ripe" and, tellingly, defendants identify nothing.

To compound the misleading representations addressed in the preceding paragraphs, Defendants' counsel also states that Plaintiff Richardson was one of the individuals designated as the PMK for CANGRESS.  What Defendants' counsel fails to tell the Court, however, is that Mr. Richardson was identified as the PMK on two issues and two issues only: the contact information for any individuals who witnessed two of the incidents involving allegations in the Complaint that Mr. Richardson was harassed.  Sobel Dec. at ¶2, Ex. 2 (CANGRESS PMK Designation).  The videos for those incidents were provided to plaintiffs months ago.

It is true that Mr. Richardson carries a video camera with him some of the time when he is out on the streets in Skid Row.  That is the source of several of the videos provided to Defendants, including the February 1, 2008 arrest of Plaintiff White, the January 18, 2008 and February 5, 2008 incidents involving harassment of Mr. Richardson.  Both he and Mr. White testified at their depositions that they videotape the private security guards on Skid Row, cultural events, new signs that appear on buildings regarding loitering laws and other "Broken Windows" police enforcement tactics, new businesses, etc., to document what is occuring in the neighborhood.

Mr. Richardson did testify that he usually turns his videos of police actions on Skid Row over to CANGRESS, but this testimony does not establish good cause to 1) enlarge the time for Defendants' motion to be heard, or 2) produce the videos because there is still no reason to believe that any video evincing harassment has been withheld. As Mr. Richardson testified at his deposition, he often arrives too late to capture an incident on tape.  He also testified that, when he is videotaping on the public sidewalk

4

1   in Skid Row, sometimes he is arrested by the LAPD, sometimes he is shoved,

2   sometimes he is ordered to move and other times the LAPD simply blocks him in other

3   ways or uses a hand gesture to indicate he must move back out of audio and visual

4   recording distance.

5          Moreover, the specific videos identified in the privilege log are protected by the

6   attorney-work product privilege.  Defendants know full well that these plaintiffs assist

7   counsel in a number of actions challenging LAPD policies directed toward homeless

8   individuals and other low-income residents of Skid Row.  For example, in *Fitzgerald*

9   *v. City of Los Angeles*, cv 03-01876 DDP, the plaintiffs in this action worked with the

10  undersigned counsel and other attorneys at the ACLU to collect the evidence filed in

11  support of the application to extend the injunction in *Fitzgerald,* one of several cases

12  involving Skid Row litigation.   In fact, in opposition to the fee application in

13  *Fitzgerald*, the Defendant City complained that Plaintiffs' hours were excessive in

14  view of the fact that Plaintiff Richardson and other CANGRESS staff collected some

15  of the declarations documenting the Fourth Amendment violations at issue in the

16  suspicionless stops, detention and handcuffing address in the *Fitzgerald* case.  Sobel

17  Decl. at ¶6.  The argument made by Defendant City was that more of the leg work of

18  collecting evidence should have been done at lower rates by plaintiff Richardson and

19  others.  Now, however, Defendants are arguing there is no attorney-work product

20  protection for the very same activity they recognized when they wanted to challenge

21  the attorney fees in *Fitzgerald*.

22         Plaintiffs have turned over 12 videos of incidents which they allege demonstrate

23  harassment of them.  These include videos of the arrest and detention of Plaintiff

24  White, two incidents involving threats against Mr. White when he was videotaping

25  police conduct on Main Street outside the CANGRESS office, multiple detentions and

26  a citation to Mr. Richardson, other incidents of harassment involving Mr. Richardson,

27  the arrest of Deborah Burton, a plaintiff in a case currently active in the district court,

28  and other incidents involving CANGRESS.  In addition, plaintiffs have provided

approximately two dozen additional videos posted on YouTube, on the CANGRESS blog, or provided to the Department of Justice for a potential civil rights investigation of police conduct on Skid Row.  Plaintiffs have withheld no videos which evince the alleged harassment, even if the video might otherwise have been privileged as attorney-work product.  Defendants have not suggested otherwise.[3]

## IV.   DEFENDANTS CONCEDE THAT THE DOCUMENTS SOUGHT ARE NOT EVEN RELEVANT TO ANY MATERIAL FACT IN THIS CASE

The specific Request for Production at issue was served as part of the PMK notice to CANGRESS.  Request No. 9 was extraordinarily broad and sought:

All audio and video recordings dated January 1, 2000 to the present in Cangress' [sic] possession concerning the Los Angeles Police Department.

Tellingly, Defendants have not used this precise language in their application to the Court, no doubt because it was not so limited to "videos taken by CANGRESS and its members that depict" the LAPD, as Defendants now represent in their ex parte application.  *See also* Exhibit 1 ("all videos concerning the Los Angeles Police Department").

Ms. Smith makes a cursory assertion, without any foundation, that Defendants will not be able to prepare their case unless they can forage through materials created as part of ongoing and anticipated litigation.  At the same time, Ms. Smith has informed the Court that the videos she seeks will have no impact on any dispositive

---

[3]  The specific request for production of documents at issue and served as part of the PMK deposition notice was extraordinarily broad and sought "All audio and video recordings dated January 1, 2000 to the present in Cangress' [sic] possession concerning the Los Angeles Police Department."  Request No. 9.  The request was not limited to "videos taken by CANGRESS and its members that depict" the LAPD, as defendants now state.  In fact, some of the videos plaintiffs produced "depict" the LAPD but were not taken by CANGRESS or its members.  These videos were produced even though they are in no way relevant to the issues in this case.

6

motion either party might file.  *See* Smith Dec. at ¶16.  So, what is the pressing need for this discovery other than that Defendants want to see what Plaintiffs and their counsel have collected as evidence of possible misconduct by the LAPD unrelated to the harassment alleged in this case? This motivation does not establish "good cause."

## V.   DEFENDANTS HAVE PRESENTED NO "GOOD CAUSE" FOR THEIR DELAY IN SERVING THE UNDERLYING DISCOVERY

Finally, Defendants' counsel has set out a long discourse on her trial dates and why she delayed in seeking this discovery.  She has also averred that Plaintiffs' counsel refused to extend the time for expert disclosures.  This is just one more example of Defendants' counsel's false assertions to this Court.  As Ms. Smith correctly states, she had previously refused to continue discovery in this case despite her significant unavailability for depositions.  *See* Smith Decl. at ¶¶ 19-21.  When Ms. Smith proposed an extension of the time to make expert disclosures, Plaintiffs' counsel did not refuse, as she states.  Rather, Plaintiffs' counsel responded that she would not decide whether to agree to an extension until Defendants responded regarding several other RELATED pending discovery issues.

Defendants then advised that their designated expert would be unavailable for deposition until August 3, 2010, at the earliest.  Plaintiffs objected to this delay, noting that it would make Defendants' expert available only after the time for designating a rebuttal expert had passed and only after the time for filing any timely discovery motions had expired, so unless Defendants would agree to adjust the discovery cut-off, Plaintiffs could not agree to these protracted delays by Defendants.  Obviously, since no request to move the discovery cut-off date was filed, Defendants refused to do so. Sobel Decl. at ¶5.

## VI.   NONE OF THE FACTORS APPLIED IN EVALUATING WHETHER A MODIFICATION SHOULD BE MADE TO THE SCHEDULING ORDER WEIGH IN FAVOR DOING SO HERE

Serious prejudice would result in this instance from changing the scheduling order.  Sobel Dec. at ¶5.  Plaintiffs' counsel has relied upon the schedule, as well as

7

Defendants' prior refusal to agree to any modifications.  Plaintiffs' counsel has rearranged her workload in other cases to meet the scheduling dates here.  The discovery cut-off date is now only a week away and dispositive motions are due to be filed in little more than a month.  Moving the discovery date to accommodate briefing and a hearing on Defendants' untimely motion would increase signficantly Plaintiffs' counsel's workload and impact other cases with impending discovery cut-offs and motion dates.  Extending the time for this motion would have a domino effect on plaintiffs' counsel's schedule, especially since no joint stipulation has been prepared regarding this motion.  Thus, there is no way for plaintiffs' counsel to cure the considerable time prejudice.

Most critically, there is no showing of "reasonable diligence" by Defendants. They have tried to create the impression there was some pivotal information divulged during the deposition of Richardson, but there is nothing they can point to and no evidence that a single video evincing harassment by the LAPD of them has been withheld.  Defendants could have asked questions of White and Dennison at their PMK depositions and White's individual deposition to elicit testimony about any relevant videos being withheld, but they did not.  In short, there is no evidence of "due diligence" by Defendants to support modifying the scheduling order by granting the requested relief.

## CONCLUSION

For all of the foregoing reasons, the ex parte application should be denied.


Dated:  August 20, 2010          Respectfully submitted,

                                 LAW OFFICE OF CAROL A. SOBEL
                                 LAW OFFICE OF REBECCA F. THORNTON

                                     /s/
                                 _____
                                 By:   CAROL A. SOBEL
                                       Attorneys for Plaintiffs

### DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am counsel for plaintiffs in the above-captioned action.  I have personal knowledge of the facts set forth below and, if I were called to testify to those facts, I could and would do so competently.

2.      Late in the day on July 20th, I received a letter from Defendants' counsel, transmitted by email, requesting that I meet and confer regarding Plaintiffs' privilege log served in response to the Request for Production of Documents to the CANGRESS PMKs.  A true and correct copy of this letter is attached at Exhibit 1.  The request was to meet and confer on July 23rd, following the deposition of plaintiff Richardson.  *Id.* On June 15, 2010, I served the response to the request for the production of documents which had been served on CANGRESS a month prior as part of the PMK deposition notice.  With that response, I also served a document designating which natural person would be deposed as the PMK for each of the 20 categories listed in Defendants' PMK discovery request.  The only two items identifying Mr. Richardson as a PMK had to do with the witnesses at two incidents involving harassment of him while videotaping. A true and correct copy of the PMK response is attached at Exhibit 2.

3.      On July 23, 2010, I was present at and defended the deposition of Mr. Richardson.  I have not received a transcript of the deposition as of today's date.  It is my practice to take detailed notes of the questions asked and responses given. I do so on my computer and did so at Mr. Richardson's deposition.  At his deposition,  Mr. Richardson testified that the four incidents in which he was detained, handcuffed, transported to the police station, ordered to move or shoved by Defendant Sgt. Zuniga were the only four incidents of physical or verbal harassment against him.  Defendants did not ask Mr. Richardson any questions regarding any of the videos on the privilege log, despite the fact that Mr. Richardson was present at many of the events videotaped. At the deposition of Mr. Richardson, Defendants' counsel asked Mr. Richardson whether he gave the videos he took on his own on Skid Row to CANGRESS.  When

Mr. Richardson responded that he did so sometimes, there were no follow-up questions to elicit whether there were <u>any</u> videos relevant to the claims of harassment in this case that had not been produced by Mr. Richardson, a necessary foundational question for this ex parte application.

4.     I was also present at the depositions of the CANGRESS PMKs on July 7, 2010 and reviewed the transcripts of the PMK depositions to prepare my declaration. At the time that Defendants deposed Mr. White and Ms. Dennison, the designated PMK on the issue of the videos, they could have but did not ask any questions regarding the privilege log.  Moreover, they did not ask any questions of Mr. White at his individual deposition about the existence of other videos depicting harassment of him by the LAPD.

5.     As Ms. Smith notes, I made several requests to continue the discovery cut-off dates and dispositive motoin date in this case over the course of the last three months.  On each occasion, Ms. Smith refused to do so.  Consequently, I was forced to postpone my work in other cases until after the impending discovery cut-off date in this case.  I have upcoming discovery cut-off dates, motions and appellate arguments in other cases.  In addition, I rejected several cases I might otherwise have taken because of the scheduling issues in this case.  It is now too late for me to accept any of those cases. It would be highly prejudicial to me to require me to brief an opposition to Defendants' untimely motion in the next few days for it to be heard on a shortened schedule.  I have plans to be out of town in New Jersey and then New Orleans the week of September 20th and have arranged my work accordingly.  It would also place considerable demand on my clients to spend time reviewing these videos again, or spend time producing them at the same time that we are completing discovery in this case and preparing our dispositive motion.  Mr. White, who has testified that he is the individual who maintains the videos for CANGRESS, has several other pending discovery responses in this case he must complete, all due in the next week.

6.     I was the original counsel in the *Fitzgerald* case, cited in Plaintiffs'

Opposition.  I prepared the fee application in that case with Peter Eliasberg of the ACLU.  In that litigation, the City opposed the number of hours for which we sought compensation on several grounds, including that Mr. Richardson and other organizers with CANGRESS assisted in collecting evidence and, therefore, plaintiffs' counsel should have utilized them more rather than send attorneys and paralegals from the ACLU and then bill for their time.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of August, 2010, at Santa Monica, California.


<u>            /s/            </u>
CAROL A. SOBEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**



City Hall East
200 N. Main Street
Room 800
Los Angeles, CA 90012

(213) 978-8100 Tel
(213) 978-8312 Fax
CTrutanich@lacity.org
www.lacity.org/atty

**CARMEN A. TRUTANICH**
City Attorney

July 20, 2010

*Via Email and First Class Mail* - (310) 393-3605

Carol Sobel, Esq.
LAW OFFICE OF CAROL A. SOBEL
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401-3459

      RE:   ***CANGRESS, et al. v. CITY OF LOS ANGELES, et al.***
              **USDC Case No. CV08-01191 DDP (RZx)**

Dear Ms. Sobel:

    This letter is to request that a meet and confer concerning Cangress' responses to Request for Production and Inspection of Documents served in connection with the notice of deposition of the PMK for Cangress. Specifically, Cangress' response to Request No. 9 is deficient and the objections are without merit. Defendants have requested all videos concerning the Los Angeles Police Department. Numerous videos were withheld on claims of privilege. It is our position that the videos are not privileged and should be produced.

    In addition, Bates Nos. 231, 234 and 244-256 are not on the cd that was produced. Please produce them immediately.

    I hereby request that we meet at my office on Friday, July 23, 2010 following the deposition of Steve Richardson to discuss this issue.

Carol Sobel, Esq.
July 20, 2010
Page 2

Please be advised that if we are not able to resolve this issue informally, Defendants will file a motion to compel the production of the videos and will seek sanctions against Plaintiffs.

Very truly yours,

COLLEEN R. SMITH
Deputy City Attorney

CS:nl
(213) 978-7027

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**

1  CAROL A. SOBEL SBN 84483
   LAW OFFICE OF CAROL A. SOBER
2  429 Santa Monica Boulevard, Ste. 550
   Santa Monica, California 90401
3  t. 3            0 393-3605
   e.
4
   REBECCA F. THORNTON
5  LAW OFFICE OF REBECCA F. THORNTON
   429 Santa Monica Boulevard, Ste. 550
6  Santa Monica, California 90401
   t. 3            5
7  e.

8  Attorneys for Plaintiffs

9               UNITED STATES DISTRICT COURT
10    FOR THE CENTRAL DISTRICT OF CALIFORNIA - Western Division

11
   CANGRESS, a non-profit corporation,     )  CASE NO: cv 08-01191 DDP (RZx)
12                                          )
   et al.,                                  )  PLAINTIFFS' DESIGNATION OF
13                                          )  PERSONS MOST KNOWLEDGEABLE ON
                Plaintiffs,                 )  THE MATTERS SET FORTH IN
14                                          )  DEFENDANTS' NOTICE OF DEPOSITION
   v.                                       )  OF THE PMK
15                                          )
   CITY OF LOS ANGELES, et al.,             )  Date: June 15, 2010
16                                          )  Time: 10:00 a.m.
                Defendants.
17  _____

18          Plaintiffs hereby respond to the notice of deposition served upon plaintiff CANGRESS

19  regarding the Person Most Knowledgeable to testify on various matters.  Plaintiffs have provided

20  the name of each PMK and objections to specific areas of inquiry.  All testimony by the PMKs

21  will be subject to the objections made below and to be raised at the deposition.

22

23  Dated: June 9, 2010                    LAW OFFICE OF CAROL A. SOBEL
                                           LAW OFFICE OF REBECCA F. THORNTON
24

25                                              /s/
                                           _____
26                                         By:    CAROL A. SOBEL
                                                  Attorneys for Plaintiffs
27

28

CANGRESS PMK DEPO AREAS OF INQUIRY:

| PMK re: | Objection | PMK |
|---|---|---|
| 1. LAPD targeting of LACAN members 2000 to the present | Overbroad, vague and ambiguous. LACAN has not claimed it was targeted from 2000 to the present. | Becky Dennison |
| 2. LAPD threat of arrest of LACAN members 2000 to present | Same objection | Becky Dennison |
| 3. Id of all LACAN members present at or who have information about 2/1/08 arrest | Objection: calls for speculation regarding LACAN members others than those present at 2/1/08 arrest who have information about it. | Pete White |
| 4. Id/addresses of all present at or who have information about 1/18/08 Steve Richardson incident | Same objection | Steve Richardson |
| 5. Id/addresses of all present at or who have information about 2/5/08 Steve Richardson incident | Same objection | Steve Richardson |
| 6. LAPD violations of First Amendment rights of LACAN members to document police activity on Skid Row. | | Becky Dennison |
| 7. Fear and apprehension that members will be subject to future violations of their rights | | Becky Dennison |
| 8. Organizational structure of LACAN and its members | | Becky Dennison |
| 9. The function and mission of CANGRESS | | Becky Dennison |
| 10. ID of any board members of CANGRESS | Objection: relevance. | Becky Dennison |
| 11. When and where board meetings are held and whether minutes kept and where and how | | Becky Dennison |
| 12. Any training and instruction given to LACAN members on how and when to document police activity on Skid Row | Objection: calls for information subject to the attorney-client and attorney-work product privileges. | Becky Dennison |
| 13. Whether there are any documents, written guidelines, manuals on how to document police activity on Skid Row | Same objection | Becky Dennison |

2

| | | |
|---|---|---|
| 14. When and how CANGRESS is to document police activity on Skid Row and who makes the decisions/ | Same objection | Becky Dennison |
| 15. What records, including documents, photographs and videos, are kept, the manner in which they are kept, how long. | | Becky Dennison |
| 16. What membership records are kept, the manner in which they are kept and how long they are kept. | Objection: the names of members are privileged pursuant to the First Amendment | Becky Dennison |
| 17. Whether CANGRESS maintains a website, blog, newspaper or other form of media and who is responsible for maintaining the content of each form of media. | | Pete White |
| 18. How often each form of media is updated and who makes such decisions. | | Pete White |
| 19. Any materials, including photographs and videos in CANGRESS' possession concerning the alleged incidents involving White and Richardson on 1/18/08, 2/1/08 and 2/5/08. | | Pete White |
| 20. Any and all statistics, charts, graphs or other data kept by CANGRESS concerning LAPD's interactions with members of CANGRESS | Objection: calls for information concerning documents subject to the attorney-client and attorney-work product privileges. | Becky Dennison |

3

1

PROOF OF SERVICE BY EMAIL AND FIRST CLASS MAIL

2

I am not a party to this case, am over the age of 18 and am located in Los Angeles County.  My business address is 429 Santa Monica Blvd., Ste. 550, Santa Monica, CA 90401.

3

4

On June 10, 2010 I served the foregoing document, captioned PLAINTIFFS' PMK DESIGNATION RESPONSE, on the attorney for defendants listed below by sending a true and correct copy by email and by placing the document in an envelope, with postage fully affixed, and depositing the envelope in a U.S. Postal Service mail box.  The envelope was addressed as follows:

5

6

Colleen Smith

7

Deputy City Attorney
City Hall East, 6th Floor

8

200 N. Main Street
Los Angeles, CA 90012

9

colleen.smith@lacity.org

10

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of June, 2010 at Santa Monica, California.

11

12

/S/
CAROL A. SOBEL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

2

CERTIFICATION OF SERVICE

3

The undersigned hereby certifies that the foregoing document has been

4

served this date on all counsel of record in this action  through the Court's

5

Electronic Case Filing system.

6

                                                          /s/

7

Dated: _August 20, 2010_                    _____

                                                CAROL A. SOBEL

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9